UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 380-1 |
| v. | |
| FELIX OMOROGBE | Judge Jorge L. Alonso |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits its sentencing memorandum for defendant Felix Omorogbe ("F. Omorogbe" or "defendant").

## I. Executive Summary

Felix Omorogbe co-owned three home health care agencies with his wife, co-defendant Patricia Omorogbe: A&Z Home Healthcare, Inc. ("A&Z"), Dominion Home Health Care, Inc. ("Dominion"), and Alliance Home Health Care Inc. ("Alliance") (together, "the agencies"). A&Z and Dominion were home health care companies located in Lansing, Illinois. Alliance was a home health care company located in Hammond, Indiana.

F. Omorogbe functioned as the financial officer for the agencies and managed their bank accounts and accounting systems. He oversaw the payment of illegal kickbacks to marketers in exchange for patient referrals to the agencies. In particular, he wrote checks and converted them into cash to pay kickbacks, but he concealed the transactions in the agency accounting systems as legitimate expenses.

He also wrote checks to agency employees and directed them to convert the checks into cash and give him the money to pay kickbacks to the marketers.

Pursuant to the Plea Agreement in this case, the defendant has acknowledged that he conducted approximately $1.6 million in financial transactions using the proceeds of healthcare fraud in the agencies' accounts by writing checks made payable to himself and others, and he used and caused those funds to be used to pay bribes and kickbacks in exchange for patient referrals.

For the reasons stated herein, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines (the "Guidelines") range of 57 to 71 months' imprisonment, followed by three years' supervised release. The government also respectfully requests that the Court enter a personal money judgment in the amount of $1,592,362 for forfeiture. *See* Dkt. 275. This sentence fits the requirements of 18 U.S.C. § 3553 in that it is sufficient, but not greater than necessary, to meet the ends of justice and deter this type of harmful activity.

## II.     Background and Overview of the Offense

On January 9, 2020, a grand jury in the Northern District of Illinois returned a superseding indictment charging defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1347, all in violation of Title 18, United States Code, Section 1349 (Count 1); conspiracy to commit an offense against the United States, namely, offering and paying unlawful payments for patient referrals, in violation of Title 42, United States Code, Section 1320a-

2

7b(b)(2)(A), all in violation of Title 18, United States Code, Section 371 (Count 10); offering and paying unlawful payments for patient referrals, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) (Counts 11-13); and money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Counts 14-23). On March 7, 2022, defendant pleaded guilty, pursuant to a plea agreement with the government to Count 14, which charged the defendant with money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

As described in the Plea Agreement, from approximately November 2009 until approximately September 2017, the defendant knowingly conducted and caused to be conducted approximately $1,592,362 in financial transactions, knowing that the transactions involved the proceeds of health care fraud, false statements relating to health care matters, and payments to induce the referral of Medicare beneficiaries. The financial transactions were conducted to conceal and disguise the nature, location, source, ownership, and control of the money. Specifically, the defendant conducted these financial transactions to generate cash to pay bribes and kickbacks to patient marketers.

## III.    Sentencing Guidelines Calculations

The government agrees with the Guidelines calculation in the PSR. The government does not believe there are any factual inaccuracies in the PSR.

The PSR calculated that the total offense level, after adjusting for acceptance of responsibility, is 25. PSR at ¶¶ 25-34. The government agrees with the calculation of criminal offense level reflected in the PSR, resulting in his criminal

history score of 0, and category of I. With an offense level of 25 and criminal history category of I, the government agrees that the Guideline range is 57 to 71 months' imprisonment. PSR at ¶ 95.

## IV. Section 3553(a) Factors Warrant a Within-Guidelines Sentence

The November 2021 Sentencing Guidelines Manual is applicable in this case. The government acknowledges the defendant's age and physical condition. PSR at ¶¶ 59-65. However, the seriousness of the offense and need for general deterrence warrant a within-guidelines sentence.

### A. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote a Respect for the Law, and Provide Just Punishment for the Offense

A meaningful sentence of incarceration should be imposed to account for the nature and circumstances of the offense and reflect the seriousness of the offense. The defendant's crime was not a momentary lapse in judgment, but rather a crime that continued for years, during which he systematically and covertly conducted financial transactions to pay health care kickbacks.

The total amount of money involved in the defendant's crime is comprised of hundreds of transactions conducted over nearly a decade. Not only did he conduct the financial transactions himself, but he directed others at the agencies to similarly conduct transactions to generate cash to pay health care kickbacks. In committing this crime, he placed his own financial greed over taxpayer dollars and the needs of vulnerable individuals who rely on the Medicare program, all in order to line his own pockets.

4

Failing to impose a significant punishment for money laundering, health care fraud and other white-collar offenses risks eroding confidence in the overall judicial system. *See United States v. Moose*, 893 F.3d 951, 958 (7th Cir. 2018) (quoting Justice Breyer's article about his role on the United States Sentencing Commission as explaining "that 'to avoid unfair anomalies' among thousands of examined cases, the Commission 'increased certain white collar sentences when necessary to avoid disparity between white collar and blue collar crime'"); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (stating the importance of the "deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail."). Lower sentences for fraud-based offenses also encourage an "everyone is doing it" mentality that serves only to encourage these sorts of "white-collar" offenses. *See United States v. Saleh*, 257 F. App'x 740, 745 (5th Cir. 2007) (stating that a district court's substantial downward variance "could be seen as expressing a special, lenient sentencing regime for white collar criminals").

## B. Need to Afford Adequate Deterrence

Although F. Omorogbe's age and acceptance of responsibility suggests there may not be a need for specific deterrence in this case, the government notes that the defendant committed the instant offense when he was in his 60s. F. Omorogbe earned a Master of Business Administration degree and worked for approximately 30 years as an accountant. PSR ¶¶ 75, 79-82. Despite his age and professional

accomplishments, he nevertheless chose to commit this offense.

In addition, the defendant continues to receive a significant amount of income from Dominion Community Integrated Living Arrangements ("CILA"), a not-for-profit that provides homes and care to adults with disabilities. PSR ¶ 89. Dominion CILA is a provider licensed by the Illinois Department of Human Services, Division of Developmental Disabilities. The government further notes that the defendant and his wife obtained the Dominion CILA properties after the commencement of the offense.

Moreover, a Guidelines sentence is necessary to deter similarly-situated individuals from engaging in fraudulent behavior. Schemes like the one perpetrated in this case threaten the integrity of federal health care benefit programs. Because the profits of those schemes can potentially be, and often are, enormous—the only limiting factors being the criminals' ability to manufacture claims and their likelihood of getting caught—it is critical to address the problem through systematic deterrence. "[D]eterrence is an important factor in the sentencing calculus because health care fraud is so rampant that government lacks the resources to reach it all." *United States v. Kulhman*, 711 F.3d 1321, 1328 (11th Cir. 2013). Health care providers who commit crimes are like other white-collar criminals who "'act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity.'" *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018); Thus, because "health-care fraud is widespread and . . . therefore there is a lower likelihood of getting caught, a serious penalty [is] necessary to ensure

6

deterrence." *Brown*, 880 F.3d at 405; *see also id.* at 407 ("The district court did not err, therefore, in resting its conclusion about the need for general deterrence on the basis that there was a low likelihood of getting caught[.]").

## V.    Conclusion

For all the foregoing reasons, the government seeks a within-Guidelines sentence for Felix Omorogbe.

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: *Sarah W. Rocha*
    Sarah W. Rocha
    Victor B. Yanz
    Claire T. Sobczak
    Trial Attorneys
    219 South Dearborn St., Rm. 500
    Chicago, Illinois 60604
    (202) 330-1735

Dated:    September 22, 2022

## **CERTIFICATE OF SERVICE**

The undersigned Trial Attorney hereby certifies that the following document:

GOVERNMENT'S SENTENCING MEMORANDUM

was served on September 22, 2022 in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s  *Sarah W. Rocha*
SARAH W. Rocha
Trial Attorney, Department of Justice
219 South Dearborn Street
Chicago, Illinois
(202) 330-1735

8